**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

UNITED STATES OF AMERICA

V.                                                          No. 25-cr-20326-TLP

KALEB DESHUN BOOKER,
     DEFENDANT

---

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM SEARCH WARRANTS
25-SW-184 AND 25-SW-185**

---

The Defendant, Kaleb Deshun Booker, moves this Court to suppress electronic data obtained via search warrants 25-SW-184 and 25-SW-185. The evidence was obtained in violation of Mr. Booker's Fourth Amendment rights, as the search warrant failed to establish probable cause as required by law.

## PROCEDURAL HISTORY

Mr. Booker is charged with several offenses in this case. In Counts 1 and 2, he is charged with Carjacking, in violation of 18 USC § 2119. In Count 3, he is charged with Bank Robbery, in violation of 18 USC § 2113(a). In Counts 4 and 5, he is charged with Unlawfully Transporting in Interstate Commerce a Stolen Motor Vehicle, in violation of 18 USC § 2312. In Count 6, he is charged with Kidnapping, in violation of 18 USC § 1201(a)(1). (*see* First Superseding Indictment, ECF No. 37)

Counts 1 and 4 stem from November 2024 and involve victim "C.C." Counts 2, 3, 5, and 6 stem from April 2025 and involve victim "M.C."

On November 10, 2024, "C.C." reported to police that he was carjacked while he was sitting in his car. C.C. reported that the subject took his car and phone at gunpoint, and then fled the area. C.C.'s vehicle, a 2014 BMW 435, was found in Mississippi on November 18, 2024. Law enforcement reports indicated that Mr. Booker's fingerprints were found on or within the vehicle.

On April 30, 2025, "M.C." reported to police that he planned to meet in person with someone that he met via the Grindr app. When M.C. arrived at the designated meeting location, he was threatened at gunpoint by an unknown person. This person forced him to drive around for a period of time and forced M.C. to withdraw money from a Regions Bank ATM. Eventually, M.C. was told to drive to an apartment complex, and his 2017 Honda Civic and cell phone were taken. On May 1, 2025, Mr. Booker was arrested in Atlanta, Georgia, while driving the stolen Civic. Mr. Booker is alleged to have fled from the police but was eventually apprehended. Two cell phones were found in the stolen Civic.[1] Mr. Booker later was interviewed by Memphis Police detectives, and he told the officers that his phone number was 901-600-4992. The two cell phones found had phone numbers 901-600-4992 and 409-651-6485. Mr. Booker also told detectives that he had not been to Memphis since February 15, 2025, and stated that he purchased the stolen Civic from someone in Georgia.

Law enforcement also questioned Mr. Booker about the November 10, 2024, carjacking of C.C. Mr. Booker told detectives that he had purchased the BMW 435 from another person.

On June 27, 2025, law enforcement obtained two separate search warrants for "Info. associated with the cellular device assigned call # (409) 651-6485 that is in the custody or

---

[1] From the discovery materials provided by the United States, it does not appear that M.C.'s cell phone was in the Civic and it is unclear whether M.C.'s cell phone was ever found.

control of Verizon" (25-SW-184) and "Info. associated with the cellular device assigned call # (901) 600-4992 that is in the custody or control of T-Mobile." (25-SW-185) Both search warrants were signed by the Honorable Annie T. Christoff, United States Magistrate Judge.  The affidavits of complaint for both search warrants read nearly identically.

In both search warrants, the affiant requests call detail records for each phone number based upon the belief that the records will reveal his whereabouts during both the November 2024 and April 2025 incidents.  The search warrant requests the call detail records for November 1 through November 20, 2024, as well as April 20 through May 1, 2025.

## LEGAL ARGUMENT

### Search Warrants 25-SW-184 and 25-SW-185 were not supported by probable cause

"The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause is a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995)). A "neutral, disinterested" judge may issue a warrant that "particularly describe[s] the things to be seized, as well as the place to be searched," so long as "those seeking the warrant ... demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (citation modified). Under traditional probable cause analysis, the affidavit in support of a warrant must, under the "totality of the circumstances," lead a "reasonable and prudent" person to believe there is a "fair probability" that "contraband or evidence of a crime" will be found in a particular place. *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (quotation omitted). And because a magistrate judge's initial determination of probable cause receives "great deference,"

reviewing courts ask only whether the magistrate had a "substantial basis" for believing that the warrant satisfied the probable cause requirement. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

The mandate of interrelation "between the place to be searched and the evidence sought" is known as the "nexus" requirement. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). "The affidavit must establish a nexus ... such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010).

Modern cell phones present unique challenges for courts analyzing the nexus requirement. After all, "our phones frequently contain information chronicling our daily lives— where we go, whom we see, what we say to our friends, and the like." *United States v. Griffith*, 867 F.3d 1265, 1268 (D.C. Cir. 2017). As a result, a suspect's phone "can serve as a fruitful source of evidence, especially if he committed the offense in concert with others whom he might communicate about it." *Id*. But the "pervasiveness" of cell phones distinguishes them from the "physical records" that animate traditional probable cause jurisprudence. *Riley v. California*, 573 U.S. 373, 395 (2014). Cell phones keep "a digital record of nearly every aspect of [our] lives" and are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id*. at 385, 395. Until the widespread use of cell phones, "people did not typically carry a cache of sensitive personal information with them as they went about their day." *Id*. at 395.

There are two potential nexus standards in the cell phone context. See *United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *3 (6th Cir. Oct. 17, 2024). One standard would

require an affidavit to make "factual allegations" that the "[cell] phone [to be searched] itself is being used in connection with criminal activity." *Id*. at *3 (emphasis added) (quoting *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021)). An alternative standard mirrors the traditional probable cause inquiry, requiring an affidavit to allege a "fair probability" the phone "will aid in a particular investigation" and "disclose evidence of criminal activity." *Id*.

In the instant case, it seems that the affiant is relying on the "traditional probable cause inquiry" described above. However, the warrant lacks a sufficient basis to establish that the call detail records will contain the location data sought by the affiant. The search warrant affidavits merely allege that the call detail records for both phone numbers might reveal Mr. Booker's whereabouts before, during, and after the two carjackings. In the November 2024 incident, it is not alleged at all that Mr. Booker possessed a phone during the carjacking of C.C. It is also not alleged that Mr. Booker used the phone to communicate with C.C., since C.C. said that he was sitting in his car when he was approached and robbed by an unknown person.

In the April 2025 incident, it is not alleged that Mr. Booker was in possession of a cell phone during the carjacking/kidnapping of M.C. Mr. Booker was in possession of cell phones when he was

The search warrant is also overbroad in that it requests data outside of the dates at issue in the indictment. The affidavit alleges that the call detail records for the dates sought may help establish "patterns of behavior" by Mr. Booker. This "bare-bones" allegation constitutes nothing more than a fishing expedition by law enforcement. It is not alleged how patterns of behavior would show evidence that information associated with these two phone numbers would disclose any evidence of criminal activity.

**The _Leon_ "good faith" exception does not apply**

Nor can the government rely on _Leon_ to salvage search warrants 25-SW-184 and 25-SW-185 at issue in this particular motion.  In _United States v. Leon_, 468 U.S. 897 (1984), the Supreme Court "created the so-called 'good faith' exception to the exclusionary rule for evidence seized in 'reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" _United States v. Ward_, 967 F.3d 550, 554 (6th Cir. 2020). But _Leon_ also cautioned that there are limits to what may be deemed "reasonable, good-faith reliance." Specifically, the exclusionary rule should continue to apply if "'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" _Id._ (quoting _Leon_, 468 U.S. at 922 n.23). The _Leon_ decision "identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable." _United States v. Laughton_, 409 F.3d 744, 748 (6th Cir. 2005). These situations arise: "(1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid." _Id._ (citing _Leon_, 468 U.S. at 914–923).

The third Leon situation applies here.  The affidavits for both search warrants contain details about the two separate crimes, as well as law enforcement's efforts to investigate the crimes.  However, the affidavits lack the critical nexus connecting the crimes to the need to review the call detail records or location data.  The affidavits offer conclusory or hopeful statements reflecting the possibility that the phone numbers have some connection to the

incidents.  Respectfully, the belief that probable cause exists to allow searches of the call detail records or location data is objectively unreasonable and is based upon mere hunches or unsubstantiated assertions.

WHEREFORE, Mr. Booker requests that the Court suppress all call detail records and location data obtained from search warrants 25-SW-184 and 25-SW-185.

RESPECTFULLY SUBMITTED,

s/Greg Gookin
Greg Gookin, TN BPR #023649
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN  38103
(901) 544-3895

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing motion on Ms. Eileen Kuo, Assistant United States Attorney, via the Court's electronic filing system, this 23rd day of April, 2026.

s/Greg Gookin
Greg Gookin
Assistant Federal Defender