**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

UNITED STATES OF AMERICA

V.                                                          No. 25-cr-20326-TLP

KALEB DESHUN BOOKER,
          DEFENDANT

---

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM SEARCH WARRANTS
25-SW-209 AND 25-SW-210**

---

The Defendant, Kaleb Deshun Booker, moves this Court to suppress electronic data

obtained via search warrants 25-SW-209 and 25-SW-210.  The evidence was obtained in

violation of Mr. Booker's Fourth Amendment rights, as the search warrants failed to establish

probable cause as required by law.

**PROCEDURAL HISTORY**

Mr. Booker is charged with several offenses in this case.  In Counts 1 and 2, he is charged

with Carjacking, in violation of 18 USC § 2119.  In Count 3, he is charged with Bank Robbery,

in violation of 18 USC § 2113(a).  In Counts 4 and 5, he is charged with Unlawfully Transporting

in Interstate Commerce a Stolen Motor Vehicle, in violation of 18 USC § 2312.  In Count 6, he is

charged with Kidnapping, in violation of 18 USC § 1201(a)(1).  (*see* First Superseding

Indictment, ECF No. 37)

Counts 1 and 4 stem from November 2024 and involve victim "C.C."  Counts 2, 3, 5, and

6 stem from April 2025 and involve victim "M.C."

On November 10, 2024, "C.C." reported to police that he was carjacked while he was sitting in his car. C.C. reported that the subject took his car and phone at gunpoint, and then fled the area. C.C.'s vehicle, a 2014 BMW 435, was found in Mississippi on November 18, 2024. Law enforcement reports indicated that Mr. Booker's fingerprints were found on or within the vehicle.

On April 30, 2025, "M.C." reported to police that he planned to meet in person with someone that he met via the Grindr app. When M.C. arrived at the designated meeting location, he was threatened at gunpoint by an unknown person. This person forced him to drive around for a period of time and forced M.C. to withdraw money from a Regions Bank ATM. Eventually, M.C. was told to drive to an apartment complex, and his 2017 Honda Civic and cell phone were taken. On May 1, 2025, Mr. Booker was arrested in Atlanta, Georgia, while driving the stolen Civic. Mr. Booker is alleged to have fled from the police but was eventually apprehended. Two cell phones were found in the stolen Civic.[1] Mr. Booker later was interviewed by Memphis Police detectives, and he told the officers that his phone number was 901-600-4992. The two cell phones found had phone numbers 901-600-4992 and 409-651-6485. Mr. Booker also told detectives that he had not been to Memphis since February 15, 2025, and stated that he purchased the stolen Civic from someone in Georgia.

Law enforcement also questioned Mr. Booker about the November 10, 2024, carjacking of C.C. Mr. Booker told detectives that he had purchased the BMW 435 from another person.

---

[1] From the discovery materials provided by the United States, it does not appear that M.C.'s cell phone was in the Civic and it is unclear whether M.C.'s cell phone was ever found.

**The Search Warrants at Issue**

On July 22, 2025, law enforcement obtained two separate search warrants for "Info. associated with Apple ID (409) 651-6485 that is stored at premises controlled by Apple Inc." (25-SW-209) and "Info. associated with Apple ID 901-600-4992, bankboykb2@gmail.com, bookingbankboy1@gmail.com that is stored at premises controlled by Apple Inc." (25-SW-210) Both search warrants were signed by the Honorable Annie T. Christoff, United States Magistrate Judge.  The affidavits of probable cause for both search warrants read nearly identically.

The probable cause affidavit discusses the April 30, 2025, incident, but *makes no mention of the November 1, 2024, incident.*

After describing the probable cause for the search warrants, the affiant requests the complete iCloud data from each Apple iCloud account.  This request includes, but is not limited to, iCloud backups, iMessages, photos, location data, app data, and account history.  The affiant requests data for the time period of November 1, 2024, through May 15, 2025.[2]  In both search warrants, the affiant states that "These windows cover several days before, during and after the incidents to allow investigators to identify potential patterns, associates, or planning behavior relevant to *both carjackings and related crimes."*  (emphasis added)

**LEGAL ARGUMENT**

**Search Warrants 25-SW-209 and 25-SW-210 were not supported by probable cause**

"The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause is a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995)). A

---

[2] Mr. Booker has been in custody since May 1, 2025.

"neutral, disinterested" judge may issue a warrant that "particularly describe[s] the things to be seized, as well as the place to be searched," so long as "those seeking the warrant ... demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (citation modified). Under traditional probable cause analysis, the affidavit in support of a warrant must, under the "totality of the circumstances," lead a "reasonable and prudent" person to believe there is a "fair probability" that "contraband or evidence of a crime" will be found in a particular place. *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (quotation omitted). And because a magistrate judge's initial determination of probable cause receives "great deference," reviewing courts ask only whether the magistrate had a "substantial basis" for believing that the warrant satisfied the probable cause requirement. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

The mandate of interrelation "between the place to be searched and the evidence sought" is known as the "nexus" requirement. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). "The affidavit must establish a nexus ... such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010).

Modern cell phones present unique challenges for courts analyzing the nexus requirement. After all, "our phones frequently contain information chronicling our daily lives— where we go, whom we see, what we say to our friends, and the like." *United States v. Griffith*, 867 F.3d 1265, 1268 (D.C. Cir. 2017). As a result, a suspect's phone "can serve as a fruitful source of evidence, especially if he committed the offense in concert with others whom he might

communicate about it." *Id*. But the "pervasiveness" of cell phones distinguishes them from the "physical records" that animate traditional probable cause jurisprudence. *Riley v. California*, 573 U.S. 373, 395 (2014). Cell phones keep "a digital record of nearly every aspect of [our] lives" and are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id*. at 385, 395. Until the widespread use of cell phones, "people did not typically carry a cache of sensitive personal information with them as they went about their day." *Id*. at 395.

There are two potential nexus standards in the cell phone context. See *United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *3 (6th Cir. Oct. 17, 2024). One standard would require an affidavit to make "factual allegations" that the "[cell] phone [to be searched] itself is being used in connection with criminal activity." *Id*. at *3 (emphasis added) (quoting *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021)). An alternative standard mirrors the traditional probable cause inquiry, requiring an affidavit to allege a "fair probability" the phone "will aid in a particular investigation" and "disclose evidence of criminal activity." *Id*.

In the instant case, Mr. Booker first argues that no nexus exists between the information sought and the iCloud accounts.  First, neither search warrant 25-SW-209 nor 25-SW-210 even discuss the November 2024 incident.  In the April 2025 incident, victim M.C. said that he only communicated with the suspected assailant through Grindr before he was carjacked.  The search warrant affidavits rely upon general statements that information from the iCloud accounts *could* provide investigators with additional evidence regarding Mr. Booker's involvement in these offenses.  "While an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus in [a] case." *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). "With due regard for [an officer's] experience, an

officer's training and experience alone are no substitute for the required evidentiary nexus between criminal activity and the place to be searched." *United States v. Pope*, 330 F. Supp. 2d 948, 956 (M.D. Tenn. 2004) (citing *Schultz*, 14 F.3d at 1097). It is unreasonable for the affiant to request all data from the iCloud accounts when there is no evidence that the suspect used any other apps or information on iCloud accounts during the crimes.

Even if the Court finds that the search warrants satisfy the nexus requirement, the sheer overbreadth of the requested data gives the Court an additional reason to suppress any evidence obtained from the iCloud accounts. As stated above, the four corners of the search warrants and accompanying affidavits do not even mention the November 2024 incident. Yet the search warrants seek data from the period of November 1, 2024, through May 15, 2025, a period of approximately seven months. In addition, the warrants seek essentially all data associated with the two iCloud accounts with claims that it "could help" investigators identify "potential patterns, associates, or planning behavior relevant to both carjackings and related crimes." There is no evidence in the affidavits that allege that Mr. Booker had any associates assisting him during his alleged crimes.

### The *Leon* "good faith" exception does not apply

Nor can the government rely on *Leon* to salvage search warrants 25-SW-209 and 25-SW-210 at issue in this particular motion. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court "created the so-called 'good faith' exception to the exclusionary rule for evidence seized in 'reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020). But *Leon* also cautioned that there are limits to what may be deemed "reasonable, good-faith reliance." Specifically, the exclusionary rule should continue to apply if "'a reasonably well trained officer would have

known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n.23). The *Leon* decision "identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). These situations arise: "(1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid." *Id.* (citing *Leon*, 468 U.S. at 914–923).

The third *Leon* situation applies here.  The affidavits contain no indicia of probable cause and instead speculate that, if officers are allowed to search the phones, they may find evidence that incriminates Mr. Booker in these crimes.  Also, the warrants seek all iCloud data from a seven month period of time while only referencing one crime that was committed on April 30, 2025.  The sheer overbreadth of the information requested (both in time and in volume) reveal the unreasonable nature of the request.  Had the warrant requested only Grindr data from the day of the offense, the Court would likely find that the warrant was valid since it was limited in scope.  Essentially, the affiant here is asking to have *carte blanche* to look through Mr. Booker's personal information when it is not related to the alleged crimes in any way.

WHEREFORE, Mr. Booker requests that the Court suppress all iCloud information obtained from search warrants 25-SW-209 and 25-SW-210.

RESPECTFULLY SUBMITTED,

s/Greg Gookin
Greg Gookin, TN BPR #023649
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN  38103
(901) 544-3895

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing motion on Ms. Eileen Kuo, Assistant United States Attorney, via the Court's electronic filing system, this 23rd day of April, 2026.

s/Greg Gookin
Greg Gookin
Assistant Federal Defender